# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| CHAD C. NARDUZZI, | : | |
| --- | --- | --- |
| Plaintiff, | : | 1:14cv-1349 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| RICHARD C. SMITH, *et al.*, | : | |
| Defendants | : | |

## **MEMORANDUM**

## **September 24, 2015**

Plaintiff, Chad C. Narduzzi ("Plaintiff"), a state inmate who was housed at the Centre County Correctional Facility ("CCCF") at all times relevant, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on July 15, 2014. (Doc. 1). Named as defendants are the following individuals: Richard C. Smith ("Smith"), Warden; Joseph S. Koleno ("Koleno"), Deputy Warden; Patacky, Corrections Officer; David Burwell ("Burwell"), Medical Doctor; Heidi Starr ("Starr"), Registered Nurse; and Licensed Practical Nurses Johnna-Kay Bilger ("Bilger"), David Goodman ("Goodman"), Michelle Kennedy ("Kennedy"), Kim Lefebvre ("Lefebvre"), Thomas Toolan ("Toolan") and Dawn Wells ("Wells"). (Doc. 1). Plaintiff alleges that Defendants violated his Eighth Amendment right to adequate medical treatment. (*Id.*)

Presently pending is a motion (Doc. 19) to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6) filed by all Defendants. For the reasons that follow, the motion will be granted.

I. STANDARD OF REVIEW

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Innis v. Wilson*, 2009 U.S. App. LEXIS 12424, *4-5 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A district court ruling on a motion to dismiss generally "relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "First, the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, the court must then

determine whether the complaint states a plausible claim for relief, which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679); *see also* 28 U.S.C. § 1915A(b) (directing the court to identify cognizable claims and to dismiss any portion of the complaint that fails to state a claim). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; FED. R. CIV. P. 8(a)(2).

In addition, because Stuart complains about "prison conditions," and is proceeding *in forma pauperis*, the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e)(2). The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000).

## II.  ALLEGATIONS OF THE COMPLAINT

Plaintiff alleges that while housed in the Restricted Housing Unit ("RHU") at the CCCF, he initially sought medical treatment for a hemorrhoid condition on July 7, 2013. (Doc. 1, ¶¶ 1-2). On July 8, 2013, Defendant "David" Goodman ordered hemorrhoid Ointment and Colace as needed and directed him to seek

follow up care in one week if necessary. (*Id.* at ¶¶ 18-19). He again sought treatment on July 25, 2013. (*Id.* at 20). He was seen the following day by Alyssa Poorman, a Licensed Nurse Practitioner, who "made the decision to call the PA (Physician) for further orders." (*Id.* at ¶¶ 21-22).

He sought treatment for the ongoing hemorrhoid condition on February 15, 2014. (*Id.* at ¶ 23). On February 24, 2014, he reported to the medical department for sick call and was being seen by Defendant Toolan. (*Id.* at ¶ 24). During this appointment, Defendant Starr questioned him regarding a request slip he sent to her concerning the "constant delay in medical treatment and neglect." (*Id.* at ¶ 25). He got into an "intense argument" with Defendants Toolan and Starr about how many times he had been treated for his hemorrhoid condition. (*Id.* at ¶ 26). Defendants Toolan and Starr were indicating that he had only been seen once and Plaintiff was arguing that he had sick call slips to prove that he had been there several times for treatment of the hemorrhoid condition. (*Id.* at ¶¶ 27-28). Plaintiff declined to be seen and left the medical department stating "that he was good, that medical needs to find his records and stop playing games." (*Id.* at ¶¶ 29-30).

On February 26, 2014, he sought treatment stating that he was experiencing a lot of pain and bleeding. (*Id.* at ¶ 33). He was seen by Defendant Burwell on March 5, 2014, who allegedly proclaimed Plaintiff's hemorrhoid case to be "the

4

worst case he has seen and that plaintiff may end up having to get the hemorrhoid tissue cut out." (*Id.* at ¶¶ 34, 36). Defendant Burwell ordered suppositories for seven days, twice daily and directed Plaintiff to follow-up if necessary. (*Id.* at ¶ 37).

He filed another sick call request on March 12, 2014. He alleges that "[o]n April 2, 2014 twenty-one (21) days after plaintiff filed sick call from (March 12, 2014) and after great pain, neglect, suffering and emotional distress due to the hemorrhoid tissue and the blind eye of all medical defendants [he was seen by Defendant Burwell]. Defendant David Burwell he stated that, the hemorrhoid is not as bad but is still there (defendant David Burwell lied on his notes saying there was no visible hemorrhoid) saw plaintiff for sick call from (March 12, 2014). Defendant ordered Hemorrhoid Ointment, and said to follow up if need be." (Id. at ¶ 41). He further alleges that "Every day since plaintiff filed sick call from March 12, 2014 he made attempts to seek all medical staff for help so to acknowledge the great pain, suffering, neglect, and emotional distress he was going through but yet the medical staff turned a blind eye to his medical needs and failed to evaluate the issue at hand. (*Id.* at ¶ 42).

He alleges that Defendants Smith and Koleno failed to address the wrongs that took place while under their authority and command as prison administrators.

5

(*Id.* at ¶¶ 52-53). Defendant Patacky refused to seek medical attention on March 24, 2014, "after witnessing [Plaintiff's] pain, suffering, and emotional distress." (*Id.* at ¶¶ 40, 54). Defendant Starr allegedly refused "to address the ongoing delay in medical treatment, inadequate medical staffing, inadequate medical care and ignor[ed] the constant neglect toward plaintiff and failed to evaluate [his] need for medical care." (*Id.* at ¶ 55). Lastly, he alleges that Defendants Burwell, Kennedy, Toolan, Goodman, Walls, Bilger, and Lefebvre, engaged in "actions of delay in medical treatment, inadequate medical care, neglect, and failing to evaluate plaintiff's medical needs in a timely manner. " (*Id.* at ¶¶ 56-62). This has caused him great pain, suffering and emotional distress and has violated his Eighth Amendment right to be free from cruel and unusual punishment. (*Id.*)

## III. DISCUSSION

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

    A.    <u>Non-Medical Defendants</u>

Defendants Smith and Koleno move to dismiss the complaint based on Plaintiff's failure to allege personal involvement. They argue that "Plaintiff's cause of action is premised upon vicarious liability concerning any claim against Warden Smith or Mr. Koleno, who are administrators at the CCCF." (Doc. 20, p. 6). Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of *respondeat superior*." *Id.* In other words, defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had

7

knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. *Atkinson*, 316 F.3d at 271; Rode, 845 F.2d at 1207-08.

A review of the complaint confirms that there are no specific assertions that either Defendant Smith or Koleno had any personal involvement in the purported violations of Plaintiff's Eighth Amendment rights. Rather, it is clear that Plaintiff is seeking to hold these defendants liable based solely on their supervisory roles. This ground of constitutional liability has been squarely rejected by the courts. *See Rode*, 845 F.2d at 1207.

In an attempt to impose liability on these Defendants, Plaintiff argues in his opposition brief that Smith and Koleno were well aware of his serious medical needs and clearly disregarded his requests for help. (Doc. 25, p. 8). However, allegations that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or an official grievance, do not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. The "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *See Rode*, 845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal

8

involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006); *see also Croom v. Wagner*, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); *Ramos v. Pennsylvania Dept. of Corrections*, No. 06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Thus, to the extent that Defendants Smith and Koleno are sued based upon review of Plaintiff's complaints, grievances or appeals, the complaint is subject to dismissal.

Additionally, for purposes of Eighth Amendment medical claims, nonmedical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *Spruill v. Gillis*, 372 F.3d 218, 236-37 (3d Cir. 2004); *Garvey v. Martinez*, No. 08- 2217, 2010 WL 569852, at *6-7 (M.D. Pa. 2010); *Hodge v. United States*, No. 06-1622, 2007 WL 2571938, at *5-6 (M.D. Pa. 2007). "If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate

health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor." *Spruill*, 372 F.3d at 236. Unquestionably, Defendants Smith, Koleno and Patacky are not physicians or medical providers and Plaintiff clearly alleges that he was under the care of a number of medical experts throughout the time period at issue. As such, he fails to state an Eighth Amendment denial of adequate medical care claim against these Defendants.

Based on the foregoing, the complaint against Defendants Smith, Koleno and Pataky will be dismissed.

B. Medical Defendants

Defendants Burwell, Starr, Bilger, Goodman, Kennedy, Lefebvre, Toolan, and Wells move to dismiss the complaint on the ground that Plaintiff fails to set forth facts that would suggest a violation of the Eighth Amendment. (Doc. 20, p. 6). There is no doubt that the Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–105 (1976). For the delay or denial of medical care to rise to a violation of the Eighth Amendment, a prisoner

must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). It has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. A medical need is serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (1987) (citations omitted).

Review of the factual allegations of the complaint confirm Plaintiff consistently received medical attention, except in the one instance where he himself declined treatment. His primary dispute, in essence, is that he did not receive the kind or quality of treatment that he would have preferred. This simply does not rise to the level of a violation of a constitutionally protected right. *See*

*Inmates of Allegheny Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). On each visit to the medical department Plaintiff's concerns were consistently addressed. Exams were conducted and medications in the form of ointments and other remedies were prescribed. No claim of deliberate indifference is made out where a significant level of care has been provided and all that is shown is that the prisoner disagrees with the professional judgment of a physician. *Estelle*, 429 U.S. at 105–06, 107 (finding that "in the medical context, . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"); *Parham v. Johnson*, 126 F.3d 454, 458 n. 7 (3d Cir. 1997) (recognizing "well-established law in this and virtually every circuit that actions characterizable as medical malpractice do not rise to the level of 'deliberate indifference' "); *Durmer*, 991 F.2d at 67 (same). *See also Taylor v. Norris*, 36 F. App'x. 228, 229 (8th Cir. 2002) (finding that deliberate indifference claim failed because it involved a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024–35 (7th Cir. 1996) (holding that an inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); *Czajka v. Caspari*, 995 F.2d 870, 871 (8th Cir. 1993)

(finding inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim). Courts will not second guess whether a particular course of treatment is adequate or proper. *See Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting *Inmates of Allegheny Cnty. Jail*, 612 F.2d at 762). *See also, e.g., Gause v. Diguglielmo*, 339 F. App'x 132, 136 (3d Cir. 2009) (a dispute over the choice of medication does not rise to the level of an Eighth Amendment violation); *Rush v. Fischer*, No. 09-9918, 2011 WL 6747392, at *3 (S.D.N.Y. 2011) ("The decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs."). And, to the extent that Plaintiff alleges he suffered long delays between his requests for sick call and being seen by the medical department, at most, this would amount to negligence. "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' " *Estelle*, 429 U.S. at 105. Plaintiff fails to allege that Defendants intentionally withheld medical treatment in order to inflict pain or harm upon him. *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); *Rouse*, 182 F.3d at 197. Consequently, the complaint against Defendants Burwell, Starr, Bilger, Goodman, Kennedy, Lefebvre, Toolan, and Wells is subject to
13

dismissal.

## IV. LEAVE TO AMEND

The Court recognizes that the sufficiency of this *pro se* pleading must be construed liberally in favor of Plaintiff, even after *Iqbal*. *See Erickson v. Pardus*, 551 U.S. 89 (2007). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). Consequently, a complaint should not be dismissed with prejudice for failure to state a claim without granting leave to amend, "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). The legal and factual deficiencies in Plaintiff's complaint render the pleading incurable. Therefore, affording him leave to amend would be futile.

## V. CONCLUSION

Based on the foregoing, the motion (Doc. 19) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) will be granted.

A separate order will enter.